THEOPHILUS R. HYDE and another *v.* JOSEPH NEWMAN CRADDICK.

A party who offers the records of other suits in evidence on the trial in the lower court, is bound to file transcripts of them, at least on being apprized of an appeal, or on being required to do so. Where such transcripts, not having been filed below, could not be included in the record of appeal, the appellant will be entitled to a *certiorari;* and, in case the appellee should not file them after the writ has issued, the case will be remanded for a new trial.

Where a curator *ad hoc*, appointed by the court to represent an absent defendant in in a revocatory action, omits to except in the lower court to the action on the ground of the want of proper parties, the failure to make such parties will be noticed in the appellate court as if it had been specially pleaded below. *Per Curiam:* A curator *ad hoc* cannot be permitted to waive any of the legal rights of the party he represents.

Plaintiffs, judgment creditors of the former owner of certain real property, instituted a revocatory action against a vendee in possession, praying that the several acts of sale by which the property had been transmitted from their debtor, through successive purchasers, to the defendant, might be annulled as fraudulent, and the property declared to belong to their debtor, and subject to be seized and sold to satisfy their judgments. *Held*, that the object of the action being to annul all the conveyances as fraudulent, the intermediate vendees of the property, should have been made parties to the suit, which cannot be maintained against the defendant alone; and that to succeed in annulling the sale, plaintiffs must show fraud in the original transaction, as well as in the successive sales, including that to the defendant.

THE plaintiffs, judgment creditors of one Joshua J. Hall, instituted this action before the District Court of the First District, praying that certain real property, which had been con-

veyed from Hall, through several intermediate vendees, to the defendant, might be adjudged to be still the property of their debtor, the conveyances annulled as fraudulent, and the property declared subject to seizure and sale in satisfaction of their judgments. The intermediate vendees between Hall and the defendant, were not made parties. A curator *ad hoc*, appointed by the court to represent Craddick, answered by a general denial of all the allegations tending to show that the property still belonged to Hall, and by a special denial of any fraud or simulation in the several sales. In a supplemental answer, he pleaded prescription. *Buchanan*, J., rendered a decision in favor of the plaintiffs, annulling the several sales, and declaring the property to be subject to seizure and sale, in satisfaction of plaintiffs' judgment. The defendant appealed.

*Lockett* and *Micou*, for the plaintiffs. Craddick, the vendee in possession of the premises, was the only party necessary to the action. The demand having been liquidated by a judgment, it was unnecessary to make Hall a party. Civil Code, arts. 1967, 1971. The intermediate holders were not necessary parties. They had parted with all right, title and interest in the property. The title was vested in the defendant alone, and, under a judgment against him the property could be seized and sold, which was the object of the plaintiffs' demand. The action is analogous to the petitory and hypothecary actions. A plaintiff claiming the property itself, or to exercise his mortgage rights upon it, cites the party whom he finds in possession as owner. If there are intermediate holders, he has nothing to do with them, though the defendant may call them in warranty. So in this suit, the defendant might have called the intermediate parties in warranty. His neglect to do so, has not destroyed his right of action; and if he has any claims upon them, he may still sue them and recover. The plaintiffs had nothing to demand of them, or against them, and therefore did not cite them as defendants.

But this exception of the non-joinder of parties, comes entirely too late. The petition set out the whole line of conveyances, and alleged it to be fictitious and simulative, and that the defendant himself was in fraud, and was merely the trustee,

holding the property for the benefit and use of Hall. Issue was joined upon these allegations, and the trial proceeded to judgment. The party cannot after appeal, or after issue joined, object that other parties ought to have been cited. This is one of the pleas that can only be made *in limine litis*. *Rothschild* v. *Bowers*, 2 Rob. 380.

But it is said that the defendant, being represented by a *curator ad hoc*, appointed by the court, is entitled to unusual indulgence, and that this court must consider as made, every objection that might have been made. The hardship of such a principle is obvious. If the objection is made on the trial, the opposite party has an opportunity of meeting it by other proofs, or of correcting any error or mistake ; if made only after appeal, the irregularity is sprung upon him when it is too late to avoid it.

The curator, or attorney of an absent defendant, is appointed by the court, for the protection of one not present to select counsel for himself. After his appointment, he conducts the case as if he had been appointed by the party interested. He is competent to plead ; to conduct the defence ; to object to testimony, or to waive an objection, precisely to the extent that any other counsel may do, if employed by the party himself. He is not made an attorney in fact, with general and discretional powers ; but he has powers as extensive as those conferred by any client on his counsel employed by himself. After being appointed, the curator acts as if employed by the party. If he did not, his appointment would be a snare. *Edmonson* v. *The Mississippi and Alabama Rail Road Company*, 13 La. 282. As to the parties necessary to a revocatory action, after judgment against the principal debtor, see arts. of the Civil Code, cited above. *Atwell* v. *Belden*, 1 La. 530. *Cole* v. *Bartlett*, 4 La. 132. *Regillo* v. *Lorente*, 7 La. 140. *Lambeth* v. *McMurray*, 15 La. 470. *Potier* v. *Harman*, 1 Rob. 525.

*Mott*, for the appellant, urged that the suit must be dismissed for the want of proper parties.

SIMON, J. The plaintiffs, who represent themselves respectively to be judgment creditors of one J. J. Hall, for certain sums of money, amounting together to the sum of $1727 40,

with interest on the judgment rendered in favor of the plaintiff Hyde, and to the sum of $4043, with interest on the judgment rendered by the Commercial Court in favor of the plaintiff Clapp, further allege in their petition that, about the time the debts were contracted, said Hall was possessed of considerable real and personal estate in the city of New Orleans, on the reputation of which, and his general credit, they, plaintiffs, were induced to trust him for large quantities of merchandize, &c.; that said Hall made said purchases with the deliberate intent to cheat and defraud the petitioners, by shipping said merchandize to Texas, by sending thither all his personal property and slaves, by himself personally absconding, and by withdrawing his real estate by false and simulated acts of sale from the pursuit of his creditors. They further state that, in accomplishment of his fraudulent purposes, he did execute false and simulated acts of sale of his real property, and prepared to abscond, when he was arrested by his creditors, confined in jail, and attempted to obtain his discharge by the insolvent laws, but failed in so doing in consequence of the numerous charges of fraud preferred against him; that he has recently succeeded in obtaining his release; and has left the State, without leaving any property standing in his own name, liable for his debts.

They further represent that, in pursuance of his fraudulent intentions, and about the time the debts above mentioned were contracted, said Hall, with the intent to defraud the plaintiffs, executed before a notary public, on the 25th of July, 1839, an act of sale to one C. C. Hall, of certain property described in the petition; that C. C. Hall was the brother, or near relative of the petitioners' debtor; was concerned with him in the conspiracy to defraud the creditors; and soon after absconded also, largely indebted and insolvent, leaving with his wife a power of attorney to sell the said property. That his said wife shortly after passed another act of sale of said property to another individual, also a relative or connection of Hall, who, still more effectually to withdraw said property from the pursuit of Hall's creditors, on the 14th of July, 1840, passed another act of sale thereof to the defendant Craddick, who is also a relative of J. J. Hall and C. C. Hall. They further aver that all said acts of

conveyance are false and simulated; that the consideration therein mentioned had no real existence; that the property, though held in the names of the several vendees, is still the property of J. J. Hall, and liable for the payment of his debts; and that the petitioners' judgments rendered on the 23d of May, 1840, were duly recorded in 1841, so as to operate as a judicial mortgage on the said property; and they pray that Craddick, who resides in Mississippi, may be cited; that the several acts of sale be decreed to be null and void; and that the property be adjudged to be still the property of J. J. Hall, liable to be seized and sold to satisfy the said judgments, &c.

A curator *ad hoc* was appointed to represent the defendant Craddick, in whose name an answer was filed, denying all the allegations of the petition going to affect the defendant's title to the property therein described; and denying specially all simulation and fraud as charged by the plaintiffs in the transfer of said property from the several vendors and vendees therein named, and specially for himself averring that he has a just, legal and valid title thereto, &c. The curator *ad hoc* subsequently pleaded the prescription of one year.

All the different acts of sale alluded to in the plaintiffs' petition were produced in evidence; and after an investigation of the facts of fraud relied on as the basis of the present action, as alleged against the debtor J. J. Hall, and the several vendees of the property, judgment having been rendered in favor of the plaintiffs, declaring all said acts simulated and fraudulent, and ordering the property to be sold and applied in satisfaction of the debts due to the plaintiffs on their judgments, the defendant Craddick appealed.

Before proceeding to the examination of the legal questions raised in this case by the defendant's counsel, in his written arguments in opposition to the plaintiff's right of maintaining this action, we have first to dispose of a motion made by the appellees' counsel to dismiss this appeal, on the ground that the record is incomplete, and that the omission cannot be supplied in the manner the defendant and appellant has attempted to do.

The certificates of the clerk and of the district judge specify that all the documents filed, and testimony adduced on the trial

below, are contained in the record, except the records of certain suits which were offered in evidence on the trial, but no transcripts of which were filed in the lower court.

It appears that those records were produced in evidence by the plaintiffs; that they were noted by the clerk as offered in evidence by the plaintiffs, but that neither the originals, nor copies were filed in the cause, so as to be included among the documentary evidence necessary to complete the record. The appellant's counsel states in his brief, that after calling on the attorneys of the appellees, and asking them to allow the records to be used in the original in the Supreme Court, he procured copies of the suits referred to at his own expense, and filed them as part of the record in this court; and we find also in the record a written agreement, signed by both counsel, by which it is declared, *that the appellees' attorneys have no objection to make, to the copies filed as above stated in the Supreme Court being taken in lieu of copies now to be made by the clerk; but, with the express reservation, that no right whatever of the plaintiffs is waived to move for dismissal of appeal on any other ground whatever.*

It cannot be controverted that it was the appellees' duty to file in the lower court copies of the documents by them produced in evidence, and that they were bound to do so, at least on being apprised of the appeal, or on being called on for that purpose by the appellant's counsel; their failing to comply with the request of the latter, when made in due time, might produce an injury to their adversary, by not putting it in his power to bring up his case before this court ; and, under such circumstances, we are not prepared to say that he should be left remediless, and that his appeal should be dismissed, without giving him the benefit of a writ of *certiorari ;* or, in case of the appellees' not filing the documents called for on the issing of the writ, that the suit should not be remanded for a new trial. It seems here that the appellant has done all that he could, to put his case in a situation to be tried on the appeal. He has procured copies of his adversaries' written evidence at his own expense, and, we think that, under such circumstances, and particularly under the terms of the agreement of the counsel above recited, which amounts at least to an admission that the copies

filed are correct, since *they are to be taken as copies made by the clerk,* justice requires that the motion made for dismissing this appeal should be overruled, as the record is now in such a state as to permit us to examine the case on its merits.

Among the questions submitted to our consideration, the first which it becomes proper and necessary to notice, is, whether this suit, which is a revocatory action, can be maintained against Craddick alone, without making all the previous vendees, *against whom the fraud is alleged,* parties to the controversy? Or, in other words, whether the sales under which Craddick holds the property sued for, can be annulled, in the absence of the vendors and vendees through whom he derives his title thereto from J. J. Hall, the plaintiffs' alleged fraudulent debtor?

From the allegations of the petition it appears, that the present action is based upon certain facts of fraud, imputed not only to J. J. Hall, the debtor, but also to C. C. Hall, his first vendee, and to the intermediate and subsequent purchasers of the property, who are all accused of having been concerned in the conspiracy to defraud J. J. Hall's creditors. It is averred in the petition, that *all the acts of sale are false and simulated,* that the considerations therein mentioned had no real existence, and that the property, *though held in the names of the several vendees,* still belongs to J. J. Hall, and is liable for the payment of his debts; and thus, the object of this action being to annul and set aside all the different conveyances which stand in the way of the exercise of the plaintiffs' rights on their debtor's property, it is obvious that the annulling of Craddick's sale alone would not, so long as the other sales should be permitted to have their effect, attain the views of the plaintiffs, as they could not perhaps have the property seized and sold as belonging to J. J. Hall. For this purpose they have prayed that all the several acts of sale be decreed to be null and void, and Craddick alone has been cited to answer their demand.

The exception of non-joinder was not pleaded below, and the plaintiffs' counsel has contended that it is now too late to urge it. But the record shows that Craddick has not answered personally, and is only represented by a curator *ad hoc* appointed by the court; and as said curator cannot be permitted to waive

any of the legal rights of the party he represents, and, above all, as a judgment rendered in the absence of the interested parties, without their having been duly cited, could never have any legal force and effect against them, we feel bound to consider the exception as if it had been originally and specially pleaded, for our disregarding it would not give any greater force or validity to the judgment appealed from, if maintained on this ground, for want of a formal and special exception. It is clear that, if the intermediate sales cannot be declared void, in the absence of the parties therein interested as vendees, the judgment, as to them, would be a mere nullity.

We think that, under the allegations and prayer of the petition, all the intermediate vendees of the property should have been made parties to this suit, and that it cannot be maintained against Craddick alone, who is a non-resident, and only represented by a curator. It is true that, under the authority of art. 1970 of the Civil Code, we have often recognized the doctrine, that a creditor who wishes to institute a revocatory action, must either have his debt liquidated by a judgment, or make the purchaser of the property of his debtor a party to the suit for the liquidation of his claim; and, in some instances, that the necessity of making the original debtor a party to the revocatory action, only exists where the debt has not been previously liquidated by a judgment; and that, in this case, the plaintiffs sue as judgment creditors of J. J. Hall. See 1 La. 503. 4 La. 132. 7 Ibid, 142. 15 Ibid, 470. 1 Robinson. 525. But here, the question is not whether it was necessary to make J. J. Hall, the original debtor, a party to this action, for, as to him, the plaintiffs have done what they were bound to do. Civil Code, art. 1967. The enquiry is, whether all the subsequent and intermediate vendees of his property, alleged and considered by the plaintiffs in their petition *as his fraudulent vendees*, should not all be joined in an action brought *to annul all the sales?* Fraud is alleged against them in collusion with the debtor—must they not have an opportunity of rebutting those allegations? They are treated in the petition as a gang of conspirators, whose object, in transferring the property from one to the other, was to defraud the plaintiffs? Shall they be declared

to be so, without being allowed to deny the charge, and to show not only the falsity of the allegation, but also the nature, legality, and legitimacy of the transactions? Shall they be condemned without being heard, and this by a judgment rendered contradictorily with a curator *ad hoc* appointed to represent an absentee? Certainly not. Again, without showing the fraud alleged, as having existed in the origin of the transaction; without proving that the first sale and the subsequent ones down to that to Craddick, were tainted with the same fraud and collusion, it is clear that the plaintiffs can never succeed in taking the property from Craddick's apparent ownership and possession. The averments of the petition, which are the basis of the action, go to show that the several acts of sale complained of were one and the same fraudulent and collusive transaction, in which all the vendees were concerned; they are charged with the fraud and conspiracy, as if they had all joined in the same act, performed in different parts, and at divers periods; they are represented to be J. J. Hall's vendees; and it seems to us that, viewed in this light, they should have been made defendants, in the same manner as if they had become the fraudulent purchasers of the property in and by only one act.

With this view of the first question presented, it is clear that this action cannot be maintained; and it is, therefore, unnecessary to express any opinion on the other points of the case.

It is, therefore, ordered and decreed, that the judgment of the District Court be annulled and reversed, and that ours be for the defendant as in a case of non-suit, with the costs in both courts.